ORIGINAL

FILED

E-filing

1  LERACH COUGHLIN STOIA GELLER
       RUDMAN & ROBBINS LLP
2  WILLIAM S. LERACH (68581)
   DARREN J. ROBBINS (168593)
3  TRAVIS E. DOWNS III (148274)
   655 West Broadway, Suite 1900
4  San Diego, CA 92101
   Telephone: 619/231-1058
5  619/231-7423 (fax)
   billl@lerachlaw.com
6  darrenr@lerachlaw.com
   travisd@lerachlaw.com
7
   Attorneys for Plaintiff
8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11                    SAN JOSE DIVISION

12  ALASKA ELECTRICAL PENSION FUND,      )  **VIA FAX**
    Derivatively on Behalf of NOVELLUS   )
13  SYSTEMS, INC.,                       )  C 06 3870 RS
                                         )
14                    Plaintiff,         )  **No.**
                                         )  VERIFIED SHAREHOLDER DERIVATIVE
15        vs.                            )  COMPLAINT FOR VIOLATION OF THE
                                         )  FEDERAL SECURITIES LAWS AND
16  RICHARD S. HILL, JEFFREY C. BENZING, )  STATE LAW CLAIMS FOR BREACH OF
    WILLIAM H. KURTZ, NEIL R. BONKE,     )  FIDUCIARY DUTY, ABUSE OF
17  YOUSSEF A. EL-MANSY, J. DAVID        )  CONTROL, CONSTRUCTIVE FRAUD,
    LITSTER, YOSHIO NISHI, GLEN G.       )  CORPORATE WASTE, UNJUST
18  POSSLEY, ANN D. RHOADS, WILLIAM R.   )  ENRICHMENT, GROSS
    SPIVEY and DELBERT A. WHITAKER,      )  MISMANAGEMENT, ACTION FOR
                                         )  ACCOUNTING AND VIOLATION OF
19                    Defendants,        )  CALIFORNIA CORPORATIONS CODE
                                         )
20        – and –                        )
                                         )
21  NOVELLUS SYSTEMS, INC., a California )
    corporation,                         )
22                                       )
                      Nominal Defendant. )
23  _____ )  DEMAND FOR JURY TRIAL

24

25

26

27

28

## NATURE OF THE ACTION

1. This is a shareholder derivative action brought by a shareholder of Novellus Systems, Inc. ("Novellus" or the "Company") on behalf of the Company against its entire Board of Directors and certain current officers and former top officers and/or directors (collectively, "Defendants"). This action seeks to remedy Defendants' violations of federal and state law, including breaches of fiduciary duty, abuse of control, constructive fraud, corporate waste, unjust enrichment and gross mismanagement, arising out of a scheme and wrongful course of business whereby Defendants allowed senior Novellus insiders to divert hundreds of millions of dollars of corporate assets to themselves via the manipulation of grant dates associated with hundreds of thousands of stock options granted to Novellus insiders. Each of the Defendants also participated in the concealment of the backdating option scheme complained of herein and/or refused to take advantage of the Company's legal rights to require these senior insiders to disgorge the hundreds of millions in illicitly obtained incentive compensation and proceeds diverted to them since 1997.

2. Between 1995 and May 2006, Defendants also caused Novellus to file false and misleading statements with the Securities and Exchange Commission ("SEC"), including Proxy Statements filed with the SEC which stated that the options granted by Novellus carried with them an exercise price that was not less than the fair market value of Novellus stock on the date of grant and issuance.

3. In fact, Defendants were aware that the practices employed by the Board allowed the stock option grants to be backdated to dates when the Company's shares were trading at or near the lowest price for that relevant period. By May 1996, Defendants' backdating scheme had yielded stock option grants to the Company's executive officers worth millions of dollars, contributing to their ability to sell over $128 million worth of Novellus stock.

4. Novellus's financial results as reported and filed with the SEC were false. Defendants' misrepresentations and wrongful course of conduct violated the Securities Exchange Act of 1934 (the "Exchange Act"), as well as state law. By authorizing and/or acquiescing in the stock option backdating scheme, Defendants: (i) caused Novellus to issue false statements; (ii)

1  diverted hundreds of millions of dollars of corporate assets to senior Novellus executives; and (iii)

2  subjected Novellus to potential liability from regulators, including the SEC and the IRS.

3      5.      Defendants' gross mismanagement and malfeasance over the past decade has

4  exposed Novellus and its senior executives to criminal and civil liability for issuing false and

5  misleading financial statements. Specifically, defendants caused or allowed Novellus to issue

6  statements that failed to disclose or misstated the following: (i) that the Company had problems

7  with its internal controls that prevented it from issuing accurate financial reports and projections;

8  (ii) that because of improperly recorded stock-based compensation expenses, the Company's

9  financial results violated Generally Accepted Accounting Principles ("GAAP"); and (iii) that the

10  Company's public disclosures presented an inflated view of Novellus's earnings and earnings per

11  share.

12      6.      Defendants' malfeasance and mismanagement during the relevant period has

13  wreaked hundreds of millions of dollars of damages on Novellus. The Company's senior

14  executives were incentivized to over-pay themselves, to profit from their misconduct by cashing

15  in on under-priced stock options and to issue false financial statements to cover up their misdeeds.

16  Defendants' breaches of fiduciary duties in the administration of the Company's stock option

17  plans so polluted the plans with grant date manipulations so as to void all grants made pursuant to

18  the plans. The Company has now been mentioned as one of several companies likely to have

19  manipulated options. Meanwhile, certain of the Defendants, who received under-priced stock

20  options and/or knew material non-public information regarding Novellus's internal control

21  problems, abused their fiduciary relationship with the Company by selling over $128 million

22  worth of their personally held shares at artificially inflated prices during the relevant period. This

23  action seeks recovery for Novellus against these faithless fiduciaries, as Novellus's Board of

24  Directors, as currently composed, is simply unable or unwilling to do so.

25      **INTRADISTRICT ASSIGNMENT**

26      7.      A substantial part of the events or omissions which give rise to the claims in this

27  action occurred in the county of San Francisco, and as such this action is properly assigned to the

28  San Francisco or Oakland divisions of this Court.

## JURISDICTION AND VENUE

8.     The claims asserted herein arise under §§10(b), 14(a) and 20(a) of the Exchange Act, 15 U.S.C. §§78j(b), 78n(a) and 78t(a), and Rule 10b-5, 17 C.F.R. §240.10b-5, promulgated thereunder, and under California law for breach of fiduciary duty, abuse of control, constructive fraud, corporate waste, unjust enrichment and gross mismanagement. In connection with the acts, conduct and other wrongs complained of herein, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, the United States mail and the facilities of a national securities market.

9.     This Court has subject matter jurisdiction pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa, as well as 28 U.S.C. §§1331 and 1337. This Court also has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. §1367.

10.    This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

11.    Venue is proper in this district pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa, as well as 28 U.S.C. §1391(b). Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District. Novellus is located in and conducts its business in this District. Further, Defendants conduct business in this District, and certain of the Defendants are citizens of California and reside in this District.

## PARTIES

12.    Plaintiff Alaska Electrical Pension Fund is a shareholder of Novellus, and holds and has continually held Novellus stock at all relevant times since March 2000.

13.    Nominal party Novellus is a California corporation with its principal executive offices located at 4000 North First Street, San Jose, California.

14.    Defendant Richard S. Hill ("Hill") has been Chief Executive Officer ("CEO") and a director of Novellus since 1993. In May 1996, Hill was appointed Chairman of the Board. Because of Hill's positions, he knew the adverse non-public information about the business of Novellus, as well as its finances, markets and present and future business prospects, via access to

internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the relevant period, Hill participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Based on his knowledge of material non-public information regarding the Company, defendant Hill violated Cal. Corp. Code §§25402 and 25502.5 by selling over 3 million shares of Novellus stock for proceeds of $98.8 million during the relevant period.

15. Defendant Jeffrey C. Benzing ("Benzing") is currently Vice President and Chief Business Officer of Novellus, a position he has held since March 2004. Previously, Benzing served as Director of Special Projects in November 1988, when he joined the Company. From July 1992 through June 1999, he served as Novellus's Vice President in charge of Product Development. From July 1999 through December 2001, he served as Executive Vice President, Systems Development, Engineering and Manufacturing Operations and from January 2002 through February 2004, he served as Executive Vice President of the Deposition Business Group, until he was elected to his current position with Novellus. Because of Benzing's positions, he knew the adverse non-public information about the business of Novellus, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings and via reports and other information provided to him in connection therewith. During the relevant period, Benzing participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Based on his knowledge of material non-public information regarding the Company, defendant Benzing violated Cal. Corp. Code §§25402 and 25502.5 by selling 689,390 shares of Novellus stock for proceeds of $24.1 million during the relevant period.

16. Defendant William H. Kurtz ("Kurtz") has been Chief Financial Officer ("CFO") and Executive Vice President of Novellus since September 2005. Because of Kurtz's position, he knew the adverse non-public information about the business of Novellus, as well as its finances,

1 markets and present and future business prospects, via access to internal corporate documents,
2 conversations and connections with other corporate officers and employees, attendance at
3 management meetings and via reports and other information provided to him in connection
4 therewith. During the relevant period, Kurtz participated in the issuance of false and/or
5 misleading statements, including the preparation of the false and/or misleading press releases and
6 SEC filings.

7       17.    Defendant Neil R. Bonke ("Bonke") has been a director of Novellus since April
8 2004. Because of Bonke's position, he knew the adverse non-public information about the
9 business of Novellus, as well as its finances, markets and present and future business prospects,
10 via access to internal corporate documents, conversations and connections with other corporate
11 officers and employees, attendance at Board meetings and committees thereof and via reports and
12 other information provided to him in connection therewith. During the relevant period, Bonke
13 participated in the issuance of false and/or misleading statements, including the preparation of the
14 false and/or misleading press releases and SEC filings. As a member of the Audit Committee,
15 defendant Bonke caused or allowed the dissemination of the improper public statements described
16 herein.

17       18.    Defendant Youssef A. El-Mansy ("El-Mansy") has been a director of Novellus
18 since 2004. Because of El-Mansy's position, he knew the adverse non-public information about
19 the business of Novellus, as well as its finances, markets and present and future business
20 prospects, via access to internal corporate documents, conversations and connections with other
21 corporate officers and employees, attendance at Board meetings and committees thereof and via
22 reports and other information provided to him in connection therewith. During the relevant
23 period, El-Mansy participated in the issuance of false and/or misleading statements, including the
24 preparation of the false and/or misleading press releases and SEC filings. As a member of the
25 Compensation and Governance and Nominating Committees, defendant El-Mansy controlled the
26 other Defendants' stock option awards and caused or allowed the dissemination of the improper
27 public statements described herein. Based on his knowledge of material non-public information
28

1    regarding the Company, defendant El-Mansy violated Cal. Corp. Code §§25402 and 25502.5 by
2    selling 1,667 shares of Novellus stock for proceeds of $40,323 during the relevant period.

3        19.    Defendant J. David Litster ("Litster") has been a director of Novellus since
4    February 1998. Because of Litster's position, he knew the adverse non-public information about
5    the business of Novellus, as well as its finances, markets and present and future business
6    prospects, via access to internal corporate documents, conversations and connections with other
7    corporate officers and employees, attendance at Board meetings and committees thereof and via
8    reports and other information provided to him in connection therewith. During the relevant
9    period, Litster participated in the issuance of false and/or misleading statements, including the
10   preparation of the false and/or misleading press releases and SEC filings. As a member of the
11   Compensation and Governance and Nominating Committees, defendant Litster controlled the
12   other Defendants' stock option awards and caused or allowed the dissemination of the improper
13   public statements described herein. Based on his knowledge of material non-public information
14   regarding the Company, defendant Litster violated Cal. Corp. Code §§25402 and 25502.5 by
15   selling 52,117 shares of Novellus stock for proceeds of nearly $2 million during the relevant
16   period.

17       20.    Defendant Yoshio Nishi ("Nishi") has been a director of Novellus since 2002.
18   Because of Nishi's position, he knew the adverse non-public information about the business of
19   Novellus, as well as its finances, markets and present and future business prospects, via access to
20   internal corporate documents, conversations and connections with other corporate officers and
21   employees, attendance at Board meetings and committees thereof and via reports and other
22   information provided to him in connection therewith. During the relevant period, Nishi
23   participated in the issuance of false and/or misleading statements, including the preparation of the
24   false and/or misleading press releases and SEC filings. As a member of the Compensation and
25   Governance and Nominating Committees, defendant Nishi controlled the other Defendants' stock
26   option awards and caused or allowed the dissemination of the improper public statements
27   described herein.

28

21.     Defendant Glen G. Possley ("Possley") has been a director of Novellus since July 1991.  Because of Possley's position, he knew the adverse non-public information about the business of Novellus, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith.  As a member of the Audit Committee, defendant Possley caused or allowed the dissemination of the improper public statements described herein.  During the relevant period, Possley participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.  Based on his knowledge of material non-public information regarding the Company, defendant Possley violated Cal. Corp. Code §§25402 and 25502.5 by selling 110,250 shares of Novellus stock for proceeds of nearly $1.6 million during the relevant period.

22.     Defendant Ann D. Rhoads ("Rhoads") has been a director of Novellus since 2003.  Because of Rhoads's positions, he knew the adverse non-public information about the business of Novellus, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to her in connection therewith.  During the relevant period, Rhoads participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.  As a member of the Audit Committee, defendant Rhoads caused or allowed the dissemination of the improper public statements described herein.

23.     Defendant William R. Spivey ("Spivey") has been a director of Novellus since April 1998.  Because of Spivey's position, he knew the adverse non-public information about the business of Novellus, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith.  During the relevant period, Spivey

1 | participated in the issuance of false and/or misleading statements, including the preparation of the
2 | false and/or misleading press releases and SEC filings. As a member of the Compensation and
3 | Governance and Nominating Committees, defendant Spivey controlled the other Defendants'
4 | stock option awards and caused or allowed the dissemination of the improper public statements
5 | described herein. Based on his knowledge of material non-public information regarding the
6 | Company, defendant Spivey violated Cal. Corp. Code §§25402 and 25502.5 by selling 37,800
7 | shares of Novellus stock for proceeds of $1.6 million during the relevant period.

8 | 24. Defendant Delbert A. Whitaker ("Whitaker") has been a director of Novellus since
9 | 2002. Because of Whitaker's position, he knew the adverse non-public information about the
10 | business of Novellus, as well as its finances, markets and present and future business prospects,
11 | via access to internal corporate documents, conversations and connections with other corporate
12 | officers and employees, attendance at Board meetings and committees thereof and via reports and
13 | other information provided to him in connection therewith. During the relevant period, Whitaker
14 | participated in the issuance of false and/or misleading statements, including the preparation of the
15 | false and/or misleading press releases and SEC filings. As a member of the Audit, Compensation
16 | and Governance and Nominating Committees, defendant Whitaker controlled the other
17 | Defendants' stock option awards and caused or allowed the dissemination of the improper public
18 | statements described herein.

19 | 25. The defendants identified in ¶¶14 and 17-24 are referred to herein as the "Director
20 | Defendants." The defendants identified in ¶¶14-16 are referred to herein as the "Officer
21 | Defendants." The defendants identified in ¶¶14-15, 18-19, 21 and 23 are referred to herein as the
22 | "Insider Selling Defendants."

23 | **DEFENDANTS' DUTIES**

24 | 26. Each officer and director of Novellus named herein owed the Company and
25 | Novellus shareholders the duty to exercise a high degree of care, loyalty and diligence in the
26 | management and administration of the affairs of the Company, as well as in the use and
27 | preservation of its property and assets. The conduct of Novellus's directors and officers
28 | complained of herein involves knowing, intentional and culpable violations of their obligations as

1  officers and directors of Novellus. Further, the misconduct of Novellus's officers has been
2  ratified by Novellus's Board, which has failed to take any legal action on behalf of the Company
3  against them.

4      27.    By reason of their positions as officers, directors and fiduciaries of Novellus and
5  because of their ability to control the business and corporate affairs of the Company, the
6  Defendants owed Novellus and its shareholders fiduciary obligations of candor, trust, loyalty and
7  care, and were required to use their ability to control and manage Novellus in a fair, just, honest
8  and equitable manner, and to act in furtherance of the best interests of Novellus and its
9  shareholders so as to benefit all shareholders equally and not in furtherance of their personal
10 interest or benefit. In addition, as officers and/or directors of a publicly held company, the
11 Defendants had a duty to refrain from utilizing their control over Novellus to divert assets to
12 themselves via improper and/or unlawful practices. Defendants also had a duty to promptly
13 disseminate accurate and truthful information with respect to the Company's operations, earnings
14 and compensation practices.

15     28.    Because of their positions of control and authority as directors or officers of
16 Novellus, each of the Defendants was able to and did, directly and indirectly, control the wrongful
17 acts complained of herein. As to the Director Defendants, these acts include: (i) agreement to
18 and/or acquiescence in Defendants' option backdating scheme; (ii) willingness to cause Novellus
19 to disseminate false Proxy Statements for 1996-2006, which Proxy Statements failed to disclose
20 Defendants' option backdating scheme and omitted the fact that executive officers were allowed
21 to backdate their stock option grants in order to manipulate the strike price of the stock options
22 they received. Because of their positions with Novellus, each of the Defendants was aware of
23 these wrongful acts, had access to adverse non-public information and was required to disclose
24 these facts promptly and accurately to Novellus shareholders and the financial markets but failed
25 to do so.

26     29.    Between 1996 and 2006, Defendants repeated in each Proxy Statement that the
27 stock option grants made during that period carried an exercise price that was not less than the fair
28 market value of Novellus stock on the date granted, as calculated by the public trading price of the

1  stock at the market's close on that date. However, Defendants concealed until May 2006 that the
2  stock option grants were repeatedly and consciously backdated to ensure that the strike price
3  associated with the option grants was at or near the lowest trading price for that fiscal period. Due
4  to Defendants' breach of their fiduciary duty in the administration of the stock option plans,
5  plaintiff seeks to have the directors' and officers' plans voided and gains from those plans
6  returned to the Company. In the alternative, plaintiff seeks to have all of the unexercised options
7  granted to Defendants between 1995 and 2002 cancelled, the financial gains obtained via the
8  exercise of such options returned to the Company and to have Defendants revise the Company's
9  financial statements to reflect the truth concerning these option grants.

10       30.    To discharge their duties, the directors of Novellus were required to exercise
11  reasonable and prudent supervision over the management, policies, practices and controls of the
12  business and financial affairs of Novellus. By virtue of such duties, the officers and directors of
13  Novellus were required, among other things, to:

14       (a)    manage, conduct, supervise and direct the business affairs of Novellus in
15  accordance with all applicable law (including federal and state laws, government rules and
16  regulations and the charter and bylaws of Novellus);

17       (b)    neither engage in self-dealing nor knowingly permit any officer, director or
18  employee of Novellus to engage in self-dealing;

19       (c)    neither violate nor knowingly permit any officer, director or employee of
20  Novellus to violate applicable laws, rules and regulations;

21       (d)    remain informed as to the status of Novellus's operations, including its
22  practices in relation to the cost of allowing the pervasive backdating and improperly accounting
23  for such, and upon receipt of notice or information of imprudent or unsound practices, to make a
24  reasonable inquiry in connection therewith, and to take steps to correct such conditions or
25  practices and make such disclosures as are necessary to comply with the U.S. federal securities
26  laws and their duty of candor to the Company's shareholders;

27       (e)    prudently protect the Company's assets, including taking all necessary steps
28  to recover corporate assets (cash, stock options) improperly paid to Company executives and

1   directors together with the related costs (professional fees) proximately caused by the illegal
2   conduct described herein;

3          (f)     establish and maintain systematic and accurate records and reports of the
4   business and affairs of Novellus and procedures for the reporting of the business and affairs to the
5   Board of Directors and to periodically investigate, or cause independent investigation to be made
6   of, said reports and records;

7          (g)     maintain and implement an adequate, functioning system of internal legal,
8   financial and accounting controls, such that Novellus's financial statements – including its
9   expenses, accounting for stock option grants and other financial information – would be accurate
10  and the actions of its directors would be in accordance with all applicable laws;

11         (h)     exercise control and supervision over the public statements to the securities
12  markets and trading in Novellus stock by the officers and employees of Novellus; and

13         (i)     supervise the preparation and filing of any financial reports or other
14  information required by law from Novellus and to examine and evaluate any reports of
15  examinations, audits or other financial information concerning the financial affairs of Novellus
16  and to make full and accurate disclosure of all material facts concerning, *inter alia*, each of the
17  subjects and duties set forth above.

18      31.    Each Defendant, by virtue of his or her position as a director and/or officer, owed
19  to the Company and to its shareholders the fiduciary duties of loyalty, good faith and the exercise
20  of due care and diligence in the management and administration of the affairs of the Company, as
21  well as in the use and preservation of its property and assets. The conduct of the Defendants
22  complained of herein involves a knowing and culpable violation of their obligations as directors
23  and/or officers of Novellus, the absence of good faith on their part, and a reckless disregard for
24  their duties to the Company and its shareholders which Defendants were aware or should have
25  been aware posed a risk of serious injury to the Company. The conduct of the Defendants who
26  were also officers and/or directors of the Company during the relevant period has been ratified by
27  the Director Defendants who comprised Novellus's entire Board during the relevant period.

28

32.     Defendants breached their duties of loyalty and good faith by allowing or by themselves causing the Company to misrepresent its financial results and prospects, as detailed herein *infra*, and by failing to prevent the Defendants from taking such illegal actions. As a result, Novellus has expended and will continue to expend significant sums of money.    Such expenditures include, but are not limited to:

(a)     improvidently paid executive compensation;

(b)     increased capital costs as a result of the loss of market capitalization and the Company's damaged reputation in the investment community;

(c)     costs incurred to carry out internal investigations, including legal fees paid to outside counsel; and

(d)     incurring possible IRS penalties for improperly reporting compensation.

33.     These actions have irreparably damaged Novellus's corporate image and goodwill. For at least the foreseeable future, Novellus will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that Novellus's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## AIDING AND ABETTING AND CONCERTED ACTION

34.     In committing the wrongful acts alleged herein, Defendants have pursued or joined in the pursuit of a common course of conduct and acted in concert with one another in furtherance of their common plan.

35.     During all times relevant hereto, Defendants collectively and individually initiated a course of conduct which was designed to and did: (i) conceal the fact that the Company was allowing its directors and senior officers to divert hundreds of millions of dollars to Novellus insiders and directors and causing Novellus to misrepresent its financial results; (ii) maintain Defendants' executive and directorial positions at Novellus and the profits, power and prestige which Defendants enjoyed as a result of these positions; (iii) deceive the investing public, including shareholders of Novellus, regarding Defendants' compensation practices and Novellus's financial performance.

36.     The purpose and effect of Defendants' common course of conduct was, among other things, to disguise Defendants' violations of law, breaches of fiduciary duty, abuse of control, gross mismanagement, corporate waste and unjust enrichment, to conceal adverse information concerning the Company's operation and financial condition and to artificially inflate the price of Novellus common stock so they could dispose of millions of dollars of their own Novellus stock, and enhance their executive and directorial positions and receive the substantial compensation they obtained as a result thereof.

37.     Defendants accomplished their common enterprise and/or common course of conduct by causing the Company to purposefully and/or recklessly engage in the option backdating scheme alleged herein and misrepresent Novellus's financial results. Each of the Defendants was a direct, necessary, and substantial participant in the common enterprise and/or common course of conduct complained of herein.

38.     Each of the Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

## BACKGROUND

39.     Novellus develops, manufactures, sells and supports equipment used in the fabrication of integrated circuits, commonly called microchips or chips. The customers for these products are semiconductor device manufacturers who produce chips for sale or for incorporation in their own products, or who provide chip manufacturing services to third parties. The Company focuses on a single aspect of the semiconductor device process, the deposition of conducting and insulating material films.

40.     Throughout the relevant period, Defendants caused Novellus to grant them millions of stock options permitting them to buy Novellus stock for pennies on the dollar which they could in turn sell as the Company's stock price increased. A stock option gives the holder the right to buy a stock at a certain price in the future. Typically, companies set that price at the same time

1 their directors approve an option grant, with an exercise price – also known as the "strike price" –

2 usually set at the closing price of the stock that day, the closing price of the night before or by

3 computing an average of the high and low prices on the day of the vote.

4     41.     However, many of the millions of options granted to Novellus's executives had a

5 hidden, valuable component: they were misdated, often making them even more significantly

6 valuable. The misdated stock option grants fell largely into three categories: (i) "look back"

7 grants, in which the date of the grant was picked retroactively (*e.g.,* a decision in February to pick

8 a January date); (ii) "wait and see" grants, in which a grant date was selected, but the decision was

9 finalized – and sometimes changed – at a later date (*e.g.,* a decision on January 1 to issue a grant

10 on January 15, but there is a period after January 15 in which the grantor waits to see if a more

11 advantageous price occurs and, if one does, uses that later date instead); and (iii) grants where

12 there was a failure to complete the option grant process by the date of the grant (*e.g.,* where there

13 is a decision to issue a grant as of a certain date, but after that date there are changes in the

14 grantees or amounts to grantees, and although the work is not complete on those grants as of the

15 stated grant date, that date is nonetheless used).

16 **STOCK OPTION GRANTS**

17     42.     Certain of Novellus's manipulative stock option grants are described below:

18 **1996 Option Grants**

19     43.     Defendants dated many of Novellus's 1996 option grants as of March 26, 1996 at

20 $7.50 per share (adjusted for stock splits) – nearly the low of the month when the stock traded

21 between $7.21 and $8.29 per share. Former executives John Chenault ("Chenault"), an Executive

22 Vice President of Novellus, and Robert Wagner, a Vice President of the Company, each received

23 60,000 options at this price.

24 **1997 Option Grants**

25     44.     Defendants dated many of Novellus's 1997 option grants as of January 2, 1997 at

26 $9.25 per share (adjusted for stock split) – the low of the month. The stock traded as high as

27 $13.23 per share in December. Defendant Hill received 300,000 options at this price.

28

**1998 Option Grants**

45.     Defendants dated Novellus's 1998 option grants at or near the low of the month in which the options were granted. Defendants dated many of Novellus's grants as of September 21, 1998 at $7.90 per share (adjusted for stock split) – the low of the month. The stock traded as high as $9.42 per share in September. Defendant Hill received 276,000 options at this price. Defendants also dated many of Novellus's grants as of December 17, 1998 at $16.42 per share (adjusted for stock split) – nearly the low of the month when the stock traded between $15.88 and $19.31 per share. Defendant Benzing received 150,000 options at this price. Former CFO Robert H. Smith ("Smith"), former President Peter Hanley ("Hanley") and Chenault received 135,000, 120,000 and 180,000 options, respectively, at this price.

**1999 Option Grants**

46.     Defendants dated Novellus's 1999 option grants at or near the low of the month in which the options were granted. Defendants dated many of Novellus's grants as of January 4, 1999 at $17.33 per share – the low of the month. The stock traded as high as $24.79 per share in January. Defendant Hill received 56,250 options at this price. Defendants also dated many of Novellus's grants as of August 19, 1999 at $19.15 per share – nearly the low of the month when the stock traded between $18.14 and $22.00 per share. Former executive Chenault received 79,500 options at this price. Defendants further dated many of Novellus's grants as of December 16, 1999 at $25.56 per share – nearly the low of the month when the stock traded between $24.83 and $41.21 per share. Defendant Benzing received 120,000 options at this price. Former executives Smith and Hanley received 135,000 and 120,000 options, respectively, at this price.

**2000 Option Grants**

47.     Defendants dated Novellus's 2000 option grants on December 15, 2000 at $30.25 per share. This grant, like many of Defendants other grants, occurred right before a large jump in Novellus's stock price. By January 17, 2001 – 20 trading days out – the stock had closed at $44.38 per share, a sharp increase of 47%. Defendant Hill received 300,000 options at this price. Former executives Smith, Hanley, Chenault and William van den Hoek, an Executive Vice

President of Novellus, received 145,280, 159,800, 94,400 and 106,700 options, respectively, at this price.

      48.    Below are several of Novellus's grants which occurred right before significant stock price increases:



Novellus Systems
February 26, 1996 - April 26, 1996



**Novellus Systems**

December 2, 1996 - February 3, 1997



**Novellus Systems**

August 21, 1998 - October 21, 1998





**Novellus Systems**

November 17, 1998 - February 4, 1999



**Novellus Systems**

July 19, 1999 - September 20, 1999



**Novellus Systems**
November 16, 1999 - January 18, 2000

12/16/99



**Novellus Systems**
November 15, 2000 - January 16, 2001

12/15/00

49. Complicating matters and magnifying the harm to Novellus, during the relevant period, Novellus's internal controls and accounting controls with respect to option grants and exercises, and its financial reporting, were grossly inadequate. The weaknesses allowed dates of both grants and exercises to be manipulated and the Company's executive compensation expenses to be materially understated. They also allowed grant dates to be changed to provide executives with more favorably priced options, in effect augmenting their compensation, with no benefit running to the Company.

50. Specifically, in many instances the reported dates Novellus stock options were granted differed from the dates on which the options appear to have been actually granted. The practice applied to the overwhelming majority of stock option grants made during the relevant period, which allowed executives and employees to make more money on their options because it set a lower "strike price" at which the options could be exercised, allowing employees to take larger profits when the stock price later rose. *In almost every case of misdating, the price of Novellus shares on the reported option-grant date was lower than the share price on the actual day the options were issued.*

51. Through their fiduciary duties of care, good faith and loyalty, Defendants owed to Novellus a duty to ensure that the Company's financial reporting fairly presented, in all material respects, the operations and financial condition of the Company. In order to adequately carry out these duties, it is necessary for the Defendants to know and understand the material non-public information to be either disclosed or omitted from the Company's public statements. This material non-public information included the problems Novellus faced because of its deficient internal controls. Furthermore, defendants Possley, Bonke, Whitaker and Rhoads, as members of the Audit Committee during the relevant period, had a special duty to know and understand this material information as set out in the Audit Committee's charter, which provides that the Audit Committee is responsible for reviewing, in conjunction with management, the Company's policies generally with respect to the Company's earnings press releases and with respect to financial information and earnings guidance provided to analysts and rating agencies. Defendants Hill,

Benzing and Kurtz, as officers of Novellus, had ample opportunity to discuss this material information with their fellow officers at management meetings and via internal corporate documents and reports. Moreover, defendants Hill, Litster, Possley, Spivey, Whitaker, Nishi, Bonke, Rhoads and El-Mansy, as directors of Novellus, had ample opportunity to discuss this material information with fellow directors at any of the scores of Board meetings that occurred during the relevant period as well as at committee meetings of the Board. Despite these duties, Defendants negligently, recklessly, and/or intentionally caused or allowed, by their actions or inactions, the misleading statements to be disseminated by Novellus to the investing public and the Company's shareholders during the relevant period.

52.    Specifically, since 1995, Defendants have caused Novellus to report false and misleading fiscal and quarterly financial results which materially understated its compensation expenses and thus overstated its earnings as follows:

| FISCAL YEAR | REPORTED EARNINGS (LOSS) (in thousands) | REPORTED BASIC EARNINGS (LOSS) PER SHARE |
|---|---|---|
| 1995 | $82,543 | $4.82 |
| 1996 | $94,029 | $5.70 |
| 1997 | $(95,658) | $(0.96) |
| 1998 | $52,828 | $0.50 |
| 1999 | 76,574 | $0.64 |
| 2000 | $151,065 | $1.12 |
| 2001 | $144,470 | $0.97 |
| 2002 | $22,920 | $0.15 |
| 2003 | $(67,814) | $(0.45) |
| 2004 | $156,690 | $1.06 |
| 2005 | $110,107 | $0.80 |

53.    Meanwhile, Defendants were causing the Company to grant them millions of stock options, many of which were misdated. The Company's executive directors and officers received a significant number of stock options as compensation during the relevant period. In total, during the relevant period Defendants caused the Company to grant them millions of stock options, many of which, the evidence will show, were misdated.

54.    Moreover, throughout the relevant period certain of the Defendants exercised many of these stock options contributing to their ability to sell over $128 million worth of Novellus stock they obtained often by cashing in under-priced stock options:

| Defendant | Dates of Sales | Shares Sold | Proceeds Received |
|---|---|---|---|
| Benzing | 11/25/96-2/26/04 | 689,390 | $24,105,814 |
| El-Mansy | 5/12/2006 | 1,667 | $40,323 |
| Hill | 2/27/96-6/6/03 | 3,053,005 | $98,837,495 |
| Litster | 11/9/99-5/4/06 | 52,117 | $1,972,498 |
| Possley | 11/22/96-11/24/98 | 110,250 | $1,561,518 |
| Spivey | 4/27/01-6/6/03 | 37,800 | $1,646,861 |
| TOTAL | | 3,944,229 | $128,164,509 |

55.    Then, on May 22, 2006, Novellus's stock dropped as a result of Merrill Lynch issuing an analyst report in which it questioned Novellus's option granting practices for at least the period 1997-2002.

56.    In effect, during the relevant period, the Defendants caused Novellus's shares to trade at artificially inflated levels by issuing a series of materially false and misleading statements regarding the Company's financial statements, business and prospects. Specifically, Defendants caused or allowed Novellus to issue statements that failed to disclose or misstated the following: (i) that the Company had problems with its internal controls that prevented it from issuing accurate financial reports and projections; (ii) that because of improperly recorded stock-based compensation expenses the Company's financial results violated GAAP; and (iii) that the Company's public disclosures presented an inflated view of Novellus's earnings and restated earnings.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

57.    Plaintiff brings this action derivatively in the right and for the benefit of Novellus to redress injuries suffered and to be suffered by Novellus as a direct result of Defendants' violations of state and federal law, breaches of fiduciary duty, abuse of control, constructive fraud, gross mismanagement, corporate waste and unjust enrichment, as well as the aiding and abetting thereof, by the Defendants. This is not a collusive action to confer jurisdiction on this Court which it would not otherwise have.

58.    Plaintiff will adequately and fairly represent the interests of Novellus and its shareholders in enforcing and prosecuting its rights.

1       59.     Plaintiff is an owner of Novellus stock and was an owner of Novellus stock during

2  times relevant to Defendants' illegal and wrongful course of conduct alleged herein.

3       60.     Based upon the facts set forth throughout this Complaint, applicable law and the

4  longstanding rule that equity does not compel a useless and futile act, a pre-filing demand upon

5  the Novellus Board of Directors to institute this action against the officers and members of the

6  Novellus Board of Directors is excused as futile. A pre-filing demand would be a useless and

7  futile act because:

8       (a)     The members of Novellus's Board have demonstrated their unwillingness

9  and/or inability to act in compliance with their fiduciary obligations and/or to sue themselves

10  and/or their fellow directors and allies in the top ranks of the corporation for the violations of law

11  complained of herein. These are people they have developed professional relationships with, who

12  are their friends and with whom they have entangling financial alliances, interests and

13  dependencies, and therefore, they are not able to and will not vigorously prosecute any such

14  action.

15       (b)     The Novellus Board of Directors and senior management participated in,

16  approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts

17  to conceal or disguise those wrongs from Novellus's stockholders or recklessly and/or negligently

18  disregarded the wrongs complained of herein, and are therefore not disinterested parties. As a

19  result of their access to and review of internal corporate documents, or conversations and

20  connections with other corporate officers, employees, and directors and attendance at management

21  and/or Board meetings, each of the Defendants knew the adverse non-public information

22  regarding the improper stock option grants and financial reporting. Pursuant to their specific

23  duties as Board members, the Director Defendants are charged with the management of the

24  Company and to conduct its business affairs. Defendants breached the fiduciary duties that they

25  owed to Novellus and its shareholders in that they failed to prevent and correct the improper stock

26  option granting and financial reporting. Certain directors are also dominated and controlled by

27  other directors and cannot act independently of them. Thus, the Novellus Board cannot exercise

28  independent objective judgment in deciding whether to bring this action or whether to vigorously

1  prosecute this action because each of its members participated personally in the wrongdoing or are
2  dependent upon other Defendants who did.

3          (c)      The acts complained of constitute violations of the fiduciary duties owed by
4  Novellus's officers and directors and these acts are incapable of ratification.

5          (d)      The members of Novellus's Board have benefited, and will continue to
6  benefit, from the wrongdoing herein alleged and have engaged in such conduct to preserve their
7  positions of control and the perquisites derived thereof, and are incapable of exercising
8  independent objective judgment in deciding whether to bring this action.

9          (e)      Any suit by the current directors of Novellus to remedy these wrongs would
10 likely further expose the liability of Defendants under the federal securities laws, which could
11 result in additional civil and/or criminal actions being filed against one or more of the Defendants,
12 thus, they are hopelessly conflicted in making any supposedly independent determination whether
13 to sue themselves.

14         (f)      Novellus has been and will continue to be exposed to significant losses due
15 to the wrongdoing complained of herein, yet the current Board has not filed any lawsuits against
16 itself or others who were responsible for that wrongful conduct to attempt to recover for Novellus
17 any part of the damages Novellus suffered and will suffer thereby.

18         (g)      In order to properly prosecute this lawsuit, it would be necessary for the
19 directors to sue themselves and the other Defendants, requiring them to expose themselves and
20 their comrades to millions of dollars in potential civil liability and criminal sanctions, or IRS
21 penalties. This they will not do.

22         (h)      Novellus's current and past officers and directors are protected against
23 personal liability for their acts of mismanagement, waste and breach of fiduciary duty alleged in
24 this Complaint by directors' and officers' liability insurance which they caused the Company to
25 purchase for their protection with corporate funds, *i.e.,* monies belonging to the stockholders of
26 Novellus. However, due to certain changes in the language of directors' and officers' liability
27 insurance policies in the past few years, the directors' and officers' liability insurance policies
28 covering the Defendants in this case contain provisions which eliminate coverage for any action

1 brought directly by Novellus against these Defendants, known as, *inter alia*, the "insured versus

2 insured exclusion." As a result, if these directors were to sue themselves or certain of the officers

3 of Novellus, there would be no directors' and officers' insurance protection and thus, this is a

4 further reason why they will not bring such a suit. On the other hand, if the suit is brought

5 derivatively, as this action is brought, such insurance coverage exists and will provide a basis for

6 the Company to effectuate a recovery.

7         (i)     In order to bring this action for breaching their fiduciary duties, the

8 members of the Novellus Board would have been required to sue themselves and/or their fellow

9 directors and allies in the top ranks of the Company, who are their personal friends and with

10 whom they have entangling financial alliances, interests and dependencies, which they would not

11 do.

12     61.     Plaintiff has not made any demand on shareholders of Novellus to institute this

13 action since such demand would be a futile and useless act for the following reasons:

14         (a)     Novellus is a publicly traded company with approximately 127 million

15 shares outstanding, and thousands of shareholders;

16         (b)     Making demand on such a number of shareholders would be impossible for

17 plaintiff who has no way of finding out the names, addresses or phone numbers of shareholders;

18 and

19         (c)     Making demand on all shareholders would force plaintiff to incur huge

20 expenses, assuming all shareholders could be individually identified.

21        **THE STOCK OPTION BACKDATING SCHEME AND ITS IMPACT**
       **ON NOVELLUS'S FINANCIAL STATEMENTS**

22

**The 1995 Form 10-K**

23

24     62.     On or about March 20, 1996, the Company filed its 1995 Form 10-K with the SEC.

The 1995 Form 10-K was simultaneously distributed to shareholders and the public. The 1995

25

Form 10-K included Novellus's 1995 financial statements which were materially false and

26

misleading and presented in violation of GAAP, due to improper accounting for the backdated

27

28

1  stock options. As a result, Novellus's compensation expense was understated and its net earnings

2  were overstated.

3  **The 1996 Form 10-K**

4      63.    On or about March 20, 1997, the Company filed its 1996 Form 10-K with the SEC.

5  The 1996 Form 10-K was simultaneously distributed to shareholders and the public. The 1996

6  Form 10-K included Novellus's 1996 financial statements which were materially false and

7  misleading and presented in violation of GAAP, due to improper accounting for the backdated

8  stock options. As a result, Novellus's compensation expense was understated and its net earnings

9  were overstated.

10  **The 1997 Form 10-K**

11      64.    On or about March 9, 1998, the Company filed its 1997 Form 10-K with the SEC.

12  The 1997 Form 10-K was simultaneously distributed to shareholders and the public. The 1997

13  Form 10-K included Novellus's 1997 financial statements which were materially false and

14  misleading and presented in violation of GAAP, due to improper accounting for the backdated

15  stock options. As a result, Novellus's compensation expense was understated and its net earnings

16  were overstated.

17  **The 1998 Form 10-K**

18      65.    On or about March 10, 1999, the Company filed its 1998 Form 10-K with the SEC.

19  The 1998 Form 10-K was simultaneously distributed to shareholders and the public. The 1998

20  Form 10-K included Novellus's 1998 financial statements which were materially false and

21  misleading and presented in violation of GAAP, due to improper accounting for the backdated

22  stock options. As a result, Novellus's compensation expense was understated and its net earnings

23  were overstated.

24  **The 1999 Form 10-K**

25      66.    On or about March 30, 2000, the Company filed its 1999 Form 10-K with the SEC.

26  The 1999 Form 10-K was simultaneously distributed to shareholders and the public. The 1999

27  Form 10-K included Novellus's 1999 financial statements which were materially false and

28  misleading and presented in violation of GAAP, due to improper accounting for the backdated

1  stock options. As a result, Novellus's compensation expense was understated and its net earnings
2  were overstated.

**The 2000 Form 10-K**

4      67.      On or about March 23, 2001, the Company filed its 2000 Form 10-K with the SEC.
5  The 2000 Form 10-K was simultaneously distributed to shareholders and the public. The 2000
6  Form 10-K included Novellus's 2000 financial statements which were materially false and
7  misleading and presented in violation of GAAP, due to improper accounting for the backdated
8  stock options. As a result, Novellus's compensation expense was understated and its net earnings
9  were overstated.

**The 2001 Form 10-K**

11      68.      On or about March 21, 2002, the Company filed its 2001 Form 10-K with the SEC.
12  The 2001 Form 10-K was simultaneously distributed to shareholders and the public. The 2001
13  Form 10-K included Novellus's 2000 financial statements which were materially false and
14  misleading and presented in violation of GAAP, due to improper accounting for the backdated
15  stock options. As a result, Novellus's compensation expense was understated and its net earnings
16  were overstated.

**The 2002 Form 10-K**

18      69.      On or about March 5, 2003, the Company filed its 2002 Form 10-K with the SEC.
19  The 2002 Form 10-K was simultaneously distributed to shareholders and the public. The 2002
20  Form 10-K included Novellus's 2002 financial statements which were materially false and
21  misleading and presented in violation of GAAP, due to improper accounting for the backdated
22  stock options. As a result, Novellus's compensation expense was understated and its net earnings
23  were overstated.

**The 2003 Form 10-K**

25      70.      On or about March 12, 2004, the Company filed its 2003 Form 10-K with the SEC.
26  The 2003 Form 10-K was simultaneously distributed to shareholders and the public. The 2003
27  Form 10-K included Novellus's 2003 financial statements which were materially false and
28  misleading and presented in violation of GAAP, due to improper accounting for the backdated

1 | stock options. As a result, Novellus's compensation expense was understated and its net earnings
2 | were overstated.

3 | **The 2004 Form 10-K**

4 |     71.    On or about March 15, 2005, the Company filed its 2004 Form 10-K with the SEC.
5 | The 2004 Form 10-K was simultaneously distributed to shareholders and the public. The 2004
6 | Form 10-K included Novellus's 2004 financial statements which were materially false and
7 | misleading and presented in violation of GAAP, due to improper accounting for the backdated
8 | stock options. As a result, Novellus's compensation expense was understated and its net earnings
9 | were overstated.

10 | **The 2005 Form 10-K**

11 |     72.    On or about March 16, 2006, the Company filed its 2005 Form 10-K with the SEC.
12 | The 2005 Form 10-K was simultaneously distributed to shareholders and the public. The 2005
13 | Form 10-K included Novellus's 2005 financial statements which were materially false and
14 | misleading and presented in violation of GAAP, due to improper accounting for the backdated
15 | stock options. As a result, Novellus's compensation expense was understated and its net earnings
16 | were overstated

17 |     73.    The materially false and misleading 1995-2005 Form 10-Ks described above were
18 | reviewed, prepared and/or endorsed by the Director Defendants. The 1996-2005 10-Ks were
19 | signed by Defendant Hill as the Chairman of the Board and the CEO of Novellus. He also signed
20 | the 1995 10-K as the President and CEO of Novellus with former director Robert F. Graham
21 | signing as the Chairman of the Board. Defendant Kurtz signed the 2005 10-K as CFO. Former
22 | Controller and CFO Kevin S. Royal signed the 1999-2004 10-Ks and former CFO Smith signed
23 | the 1996-2001 10-Ks. Former executive William J. Wall signed the 1995 10-K as the CFO.

24 |     **DEFENDANTS' SCHEME BEGINS TO UNRAVEL**

25 |     74.    The 1996-2006 Proxy Statements concealed Defendants' option backdating
26 | scheme. Thus, the Company's shareholders remained unaware of Defendants' wrongdoing when
27 | voting on proxy proposals between 1996 and 2006. In fact, it was not until Merrill Lynch's report
28 | on May 22, 2006 that shareholders learned that the Proxy Statements which they had relied upon

1 for a decade were false and misleading. Defendants have been unjustly enriched at the expense of
2 Novellus, which has received and will receive less money from the Defendants when they
3 exercise their options at prices substantially lower than they would have if the options had not
4 been backdated.

5       75.    Each dollar diverted to Defendants via the option backdating scheme has come at
6 the expense of the Company. For example, if Benzing's 120,000 options granted in December
7 1999 had not been manipulated, but rather had a strike price of $32.84, which was the average for
8 December 1999, instead of the $25.56 strike price, which was the trading low for the month, when
9 Smith exercised those options the Company would receive $3.94 million instead of $3.07 million
10 *– a cost to the Company of $873,600 for this single instance of option backdating.*

11 **THE ADVERSE IMPACT OF DEFENDANTS' MISCONDUCT**

12       76.    Unlike most companies which avoid such option backdating abuse by issuing stock
13 option grants at the same time each year, which eliminates the potential for backdating,
14 Defendants ensured that executives would not have any such restrictions. Given the many times
15 Novellus's grants were the low of the month in which options were granted, the date of their stock
16 option grants was clearly more than merely coincidental.

17       77.    As a result of the backdating of options, Defendants have been unjustly enriched at
18 the expense of Novellus, which has received and will receive less money from Defendants when
19 they exercise their options at prices substantially lower than they would have if the options had
20 not been backdated.

21 **TOLLING OF THE STATUTE OF LIMITATIONS**

22       78.    The Counts alleged herein are timely. As an initial matter, Defendants wrongfully
23 concealed their manipulation of the stock option plans, through strategic timing and fraudulent
24 backdating, by issuing false and misleading Proxy Statements, by falsely reassuring Novellus's
25 public investors that Novellus's option grants were being administered by a committee of
26 independent directors, and by failing to disclose that backdated options were, in fact, actually
27 issued on dates other than those disclosed, and that strategically timed option grants were issued
28

based on the manipulation of insider information that ensured that the true fair market value of the Company's stock was, in fact, higher than the publicly traded price on the date of the option grant.

79. Novellus's public investors had no reason to know of the Defendants' breaches of their fiduciary duties until May 22, 2006, when Merrill Lynch issued its report detailing the option practices of Novellus.

80. Finally, as fiduciaries of Novellus and its public shareholders, the Defendants cannot rely on any limitations defense where they withheld from Novellus's public shareholders the facts that give rise to the claims asserted herein, *i.e.*, that the Novellus Board had abdicated its fiduciary responsibilities to oversee the Company's executive compensation practices, and that the option grant dates had been manipulated to maximize the profit for the grant recipients and, accordingly, to maximize the costs for the Company.

## COUNT I

### Violations of §10(b) and Rule 10b-5 of the Exchange Act
### Against All Defendants

81. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

82. Throughout the relevant period, Defendants individually and in concert, directly and indirectly, by the use and means of instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct designed to divert hundreds of millions of dollars to Defendants via improper option grants.

83. Defendants employed devices, schemes and artifices to defraud while in possession of material, adverse non-public information and engaged in acts, practices and a course of conduct that included the making of, or participation in the making of, untrue and/or misleading statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Novellus not misleading.

84. Defendants, as top executive officers and directors of the Company, are liable as direct participants in the wrongs complained of herein. Through their positions of control and

1 authority as officers of the Company, each of the Defendants was able to and did control the

2 conduct complained of herein and the content of the public statements disseminated by Novellus.

3      85.    Defendants acted with scienter throughout the relevant period, in that they either

4 had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein,

5 or acted with reckless disregard for the truth in that they failed to ascertain and to disclose the true

6 facts, even though such facts were available to them. Defendants were among the senior

7 management of the Company, and were therefore directly responsible for the false and misleading

8 statements and/or omissions disseminated to the public through press releases, news reports and

9 filings with the SEC.

10      86.    Each of the Defendants participated in a scheme to defraud with the purpose and

11 effect of defrauding Novellus.

12      87.    By virtue of the foregoing, Defendants have violated §10(b) of the Exchange Act,

13 and Rule 10b-5 promulgated thereunder.

14 **COUNT II**

15 **Violations of §14(a) of the Exchange Act Against**
16 **All Defendants**

17      88.    Plaintiff incorporates by reference and realleges each and every allegation set forth

18 above, as though fully set forth herein.

19      89.    Rule 14a-9, promulgated pursuant to §14(a) of the Exchange Act, provides that no

20 proxy statement shall contain "any statement which, at the time and in the light of the

21 circumstances under which it is made, is false or misleading with respect to any material fact, or

22 which omits to state any material fact necessary in order to make the statements therein not false

23 or misleading." 17 C.F.R. §240.14a-9.

24      90.    The 1996-2006 Proxy Statements violated §14(a) and Rule 14a-9 because they

25 omitted material facts, including the fact that Defendants were causing Novellus to engage in an

26 option backdating scheme, a fact which Defendants were aware of and participated in from at

27 least 1997.

28

1    91.    In the exercise of reasonable care, Defendants should have known that the Proxy
2    Statements were materially false and misleading.

3    92.    The misrepresentations and omissions in the Proxy Statements were material to
4    plaintiff in voting on each Proxy Statement.  The Proxy Statements were an essential link in the
5    accomplishment of the continuation of Defendants' unlawful stock option backdating scheme, as
6    revelations of the truth would have immediately thwarted a continuation of shareholders'
7    endorsement of the directors' positions, the executive officers' compensation and the Company's
8    compensation policies.

9    93.    The Company was damaged as a result of the material misrepresentations and
10   omissions in the Proxy Statements.

11                                    **COUNT III**

12                    **Violations of §20(a) of the Exchange Act Against**
                                    **All Defendants**
13

14   94.    Plaintiff incorporates by reference and realleges each and every allegation set forth
     above, as though fully set forth herein.
15

16   95.    The Defendants, by virtue of their positions with Novellus and their specific acts,
     were, at the time of the wrongs alleged herein, controlling persons of Novellus within the meaning
17
     of §20(a) of the Exchange Act.  They had the power and influence and exercised the same to
18
     cause Novellus to engage in the illegal conduct and practices complained of herein.
19
                                    **COUNT IV**
20
                                    **Accounting**
21

22   96.    Plaintiff incorporates by reference and realleges each and every allegation set forth
     above, as though fully set forth herein.
23

24   97.    At all relevant times, Defendants, as directors and/or officers of Novellus, owed the
     Company and its shareholders fiduciary duties of good faith, care, candor and loyalty.
25

26   98.    In breach of their fiduciary duties owed to Novellus and its shareholders, the
     Defendants caused Novellus, among other things, to grant backdated stock options to themselves
27

28

1  and/or certain other officers and directors of Novellus. By this wrongdoing, the Defendants
2  breached their fiduciary duties owed to Novellus and its shareholders.

3      99.    The Defendants possess complete and unfettered control over their improperly
4  issued stock option grants and the books and records of the Company concerning the details of
5  such improperly backdated stock option grants to the Defendants.

6      100.   As a result of Defendants' misconduct, Novellus has been substantially injured and
7  damaged financially and is entitled to a recovery as a result thereof, including the proceeds of
8  those improperly granted options which have been exercised and sold.

9      101.   Plaintiff demands an accounting be made of all stock option grants made to
10 Defendants, including, without limitation, the dates of the grants, the amounts of the grants, the
11 value of the grants, the recipients of the grants, the exercise date of stock options granted to the
12 Defendants, as well as the disposition of any proceeds received by the Defendants via sale or other
13 exercise of backdated stock option grants received by the Defendants.

14                              **COUNT V**

15              **Breach of Fiduciary Duty and/or Aiding and Abetting**
16                          **Against All Defendants**

17      102.   Plaintiff incorporates by reference and realleges each and every allegation set forth
18 above, as though fully set forth herein.

19      103.   Each of the Defendants agreed to and did participate with Hill and Benzing and the
20 other Defendants and/or aided and abetted one another in a deliberate course of action designed to
21 divert corporate assets in breach of fiduciary duties the Defendants owed to the Company.

22      104.   The Defendants have violated fiduciary duties of care, loyalty, candor and
23 independence owed to Novellus and its public shareholders, have engaged in unlawful self-
24 dealing and have acted to put their personal interests and/or their colleagues' interests ahead of the
25 interests of Novellus and its shareholders.

26      105.   As demonstrated by the allegations above, Defendants failed to exercise the care
27 required, and breached their duties of loyalty, good faith, candor and independence owed to

28

1 Novellus and its public shareholders, and they failed to disclose material information and/or made
2 material misrepresentations to shareholders regarding Defendants' option backdating scheme.

3      106.   By reason of the foregoing acts, practices and course of conduct, the Defendants
4 have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations
5 toward Novellus and its public shareholders.

6      107.   As a proximate result of Defendants' conduct, in concert with Hill and Benzing,
7 Novellus has been injured and is entitled to damages.

8 **COUNT VI**

9 **Abuse of Control Against All Defendants**

10      108.   Plaintiff incorporates by reference and realleges each and every allegation set forth
11 above, as though fully set forth herein.

12      109.   The Defendants employed the alleged scheme for the purpose of maintaining and
13 entrenching themselves in their positions of power, prestige and profit at, and control over,
14 Novellus, and to continue to receive the substantial benefits, salaries and emoluments associated
15 with their positions at Novellus. As a part of this scheme, Defendants actively made and/or
16 participated in the making of or aided and abetted the making of, misrepresentations regarding
17 Novellus.

18      110.   Defendants' conduct constituted an abuse of their ability to control and influence
19 Novellus.

20      111.   By reason of the foregoing, Novellus has been damaged.

21 **COUNT VII**

22 **Gross Mismanagement Against All Defendants**

23      112.   Plaintiff incorporates by reference and realleges each and every allegation set forth
24 above, as though fully set forth herein.

25      113.   Defendants had a duty to Novellus and its shareholders to prudently supervise,
26 manage and control the operations, business and internal financial accounting and disclosure
27 controls of Novellus.

28

114.     Defendants, by their actions and by engaging in the wrongdoing described herein, abandoned and abdicated their responsibilities and duties with regard to prudently managing the businesses of Novellus in a manner consistent with the duties imposed upon them by law. By committing the misconduct alleged herein, Defendants breached their duties of due care, diligence and candor in the management and administration of Novellus's affairs and in the use and preservation of Novellus's assets.

115.     During the course of the discharge of their duties, Defendants knew or recklessly disregarded the unreasonable risks and losses associated with their misconduct, yet Defendants caused Novellus to engage in the scheme complained of herein which they knew had an unreasonable risk of damage to Novellus, thus breaching their duties to the Company. As a result, Defendants grossly mismanaged Novellus.

116.     By reason of the foregoing, Novellus has been damaged.

## COUNT VIII

### Constructive Fraud Against All Defendants

117.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

118.     As corporate fiduciaries, Defendants owed to Novellus and its shareholders a duty of candor and full accurate disclosure regarding the true state of Novellus's business and assets and their conduct with regard thereto.

119.     As a result of the conduct complained of, Defendants made, or aided and abetted the making of, numerous misrepresentations to and/or concealed material facts from Novellus's shareholders despite their duties to, *inter alia*, disclose the true facts regarding their stewardship of Novellus. Thus they have committed constructive fraud and violated their duty of candor.

120.     By reason of the foregoing, Novellus has been damaged.

## COUNT IX

### Corporate Waste Against All Defendants

121.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

122. By failing to properly consider the interests of the Company and its public shareholders, by failing to conduct proper supervision, and by giving away millions of dollars to Defendants via the option backdating scheme, Defendants have caused Novellus to waste valuable corporate assets.

123. As a result of Defendants' corporate waste, they are liable to the Company.

## COUNT X

### Unjust Enrichment Against All Defendants

124. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

125. As a result of the conduct described above, Defendants will be and have been unjustly enriched at the expense of Novellus, in the form of unjustified salaries, benefits, bonuses, stock option grants and other emoluments of office.

126. Certain Defendants also obtained severance benefits that were not earned or justified but were instead paid as part of a scheme to cover up Defendants' complicity in the scheme.

127. All the payments and benefits provided to the Defendants were at the expense of Novellus. The Company received no benefit from these payments. Novellus was damaged by such payments.

128. Certain of the Defendants sold Novellus stock for a profit during the period of deception, misusing confidential non-public corporate information. These Defendants should be required to disgorge the gains which they have and/or will otherwise unjustly obtain at the expense of Novellus. A constructive trust for the benefit of the Company should be imposed thereon.

## COUNT XI

### Against the Officer Defendants for Rescission

129. Plaintiff incorporates by reference and realleges each and every allegation contained above as though fully set forth herein.

1    130.    As a result of the acts alleged herein, the stock option contracts between the Officer

2    Defendants and Novellus entered into during the relevant period were obtained through

3    Defendants' fraud, deceit, and abuse of control. Further, the backdated stock options were illegal

4    grants and thus invalid as they were not authorized in accordance with the terms of the publicly

5    filed contracts regarding the Officer Defendants' employment agreements and the Company's

6    stock option plan which was also approved by Novellus shareholders and filed with the SEC.

7    131.    All contracts which provide for stock option grants between the Officer Defendants

8    and Novellus and were entered into during the relevant period should, therefore, be rescinded,

9    with all sums paid under such contracts returned to the Company, and all such executory contracts

10    cancelled and declared void.

11                                              **COUNT XII**

12                          **Against the Insider Selling Defendants for Violation of**
                                    **California Corporations Code §25402**
13

14    132.    Plaintiff incorporates by reference and realleges each and every allegation set forth

15    above, as though fully set forth herein.

16    133.    At the time that the Insider Selling Defendants sold their Novellus common stock

17    as set forth herein at ¶54, by reason of their high executive and/or directorial positions with

18    Novellus, the Insider Selling Defendants had access to highly material information regarding the

19    Company, including the information set forth herein regarding the true adverse facts of Novellus's

20    improper accounting.

21    134.    At the time of such sales, that information was not generally available to the public

22    or the securities markets. Had such information been generally available, it would have

23    significantly reduced the market price of Novellus shares at that time.

24    135.    The Insider Selling Defendants, and each of them, had actual knowledge of

25    material, adverse non-public information and thus sold their Novellus common stock in California

26    in violation of California Corporations Code §25402.

27    136.    Pursuant to California Corporations Code §25502.5, the Insider Selling

28    Defendants, and each of them, are liable to Novellus for damages in an amount up to three times

the difference between the price at which Novellus common stock was sold by these defendants, and each of them, and the market value which Novellus common stock would have had at the time of the sale if the information known to these defendants, and each of them, had been publicly disseminated prior to that time and a reasonable time had elapsed for the market to absorb the information.

## COUNT XIII

### Against the Insider Selling Defendants for Breach of Fiduciary Duties for Insider Selling and Misappropriation of Information

137. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

138. At the time of the stock sales set forth herein, the Insider Selling Defendants knew the information described above, and sold Novellus common stock on the basis of such information.

139. The information described above was proprietary non-public information concerning the Company's financial condition and future business prospects. It was a proprietary asset belonging to the Company, which the Insider Selling Defendants used for their own benefit when they sold Novellus common stock.

140. At the time of their stock sales, the Insider Selling Defendants knew that the Company's revenues were materially overstated. The Insider Selling Defendants' sales of Novellus common stock while in possession and control of this material adverse non-public information was a breach of their fiduciary duties of loyalty and good faith.

141. Since the use of the Company's proprietary information for their own gain constitutes a breach of the Insider Selling Defendants' fiduciary duties, the Company is entitled to the imposition of a constructive trust on any profits the Insider Selling Defendants obtained thereby.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment as follows:

1     A.    Awarding money damages against all Defendants, jointly and severally, for all

2 losses and damages suffered as a result of the acts and transactions complained of herein, together

3 with pre-judgment interest, to ensure Defendants do not participate therein or benefit thereby;

4     B.    Directing all Defendants to account for all damages caused by them and all profits

5 and special benefits and unjust enrichment they have obtained as a result of their unlawful

6 conduct, including all salaries, bonuses, fees, stock awards, options and common stock sale

7 proceeds and imposing a constructive trust thereon;

8     C.    Directing Novellus to take all necessary actions to reform and improve its

9 corporate governance and internal control procedures to comply with applicable law, including,

10 but not limited to, putting forward for a shareholder vote resolutions for amendments to the

11 Company's By-Laws or Articles of Incorporation and taking such other action as may be

12 necessary to place before shareholders for a vote adoption of the following Corporate Governance

13 policies:

14     (i)    a proposal requiring that the office of CEO of Novellus and

15 Chairman of the Novellus Board of Directors be permanently held by separate individuals and that

16 the Chairman of the Novellus Board meets rigorous "independent" standards;

17     (ii)    a proposal to strengthen the Novellus Board's supervision of

18 operations and develop and implement procedures for greater shareholder input into the policies

19 and guidelines of the Board;

20     (iii)    appropriately test and then strengthen the internal audit and control

21 function;

22     (iv)    rotate independent auditing firms every five years;

23     (v)    control and limit insider stock selling and the terms and timing of

24 stock option grants; and

25     (vi)    reform executive compensation.

26     D.    Ordering the imposition of a constructive trust over Defendants' stock options and

27 any proceeds derived therefrom;

28     E.    Awarding punitive damages;

1    F.    Awarding costs and disbursements of this action, including reasonable attorneys',

2  accountants', and experts' fees; and

3    G.    Granting such other and further relief as this Court may deem just and proper.

4                                **JURY DEMAND**

5       Plaintiff demands a trial by jury.

6  DATED: June 21, 2006                    LERACH COUGHLIN STOIA GELLER
                                            RUDMAN & ROBBINS LLP
7                                          WILLIAM S. LERACH
                                            DARREN J. ROBBINS
8                                          TRAVIS E. DOWNS III

9

10                                         _____
                                                WILLIAM S. LERACH
11
                                            655 West Broadway, Suite 1900
12                                          San Diego, CA 92101-3301
                                            Telephone: 619/231-1058
13                                          619/231-7423 (fax)

14                                          Attorneys for Plaintiff

15  S:\CptDraft\Derivative\Cpt Novellus Systems Derv.doc

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report.

ATTORNEY OF RECORD FOR PLAINTIFF
ALASKA ELECTRICAL PENSION FUND

<u>VERIFICATION</u>

I, WILLIAM S. LERACH, hereby declare as follows:

2.    I am a member of the law firm of Lerach Coughlin Stoia Geller Rudman & Robbins, LLP, counsel for plaintiff in the above-entitled action. I have read the foregoing complaint and know the contents thereof. I am informed and believe the matters therein are true and on that ground allege that the matters stated therein are true.

3.    I make this Verification because plaintiff is absent from the County of San Diego where I maintain my office.

Executed this 21st day of June, 2006 at San Diego, California.

_____
WILLIAM S. LERACH